**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 7 |
| | § | |
| HEALTHCARE PAYCARD LLC,[1] | § | Case No. 23-40687 (BTR) |
| | § | |
| Debtor. | § | |
| | § | |
| In re: | § | Chapter 7 |
| | § | |
| SMARTHEALTH PAYCARD LLC,[2] | § | Case No. 23-40688 (BTR) |
| | § | |
| Debtor. | § | |

**ORDER ON TRUSTEE'S MOTION
(A) APPROVING THE SALE OF SUBSTANTIALLY
ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS
AND LIABILITIES, (B) AUTHORIZING THE TRUSTEE TO ASSUME
AND ASSIGN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN
CONNECTION WITH THE SALE, AND (C) GRANTING RELATED RELIEF**

Upon the *Expedited Motion to Sell Property of the Estate Free and Clear of Liens, Claims and Encumbrances (Substantially All Assets)* [Case No. 23-40687, Docket No. 43; Case No. 23-40688, Docket No. 45] (the "Sale Motion"), filed by Michelle Chow, Chapter 7 trustee (the "Trustee") for the above captioned debtors (the "Debtors"), seeking entry of this order (this "Sale Order") for, among other things, approval of:  (a) the sale of certain of the Debtors' assets pursuant to the APA (as defined below) free and clear of liens, claims, and interests, and (b) the assumption and assignment of executory contracts and unexpired leases of the Debtors as may be requested

---

[1] The last four digits of HealthCare PayCard LLC's EIN is 8539.  The entity's operating address is listed as 5600 Tennyson Pkwy, Suite 190, Plano, TX 75024.

[2] The last four digits of SmartHealth PayCard LLC's EIN is 0422.  The entity's operating address is listed as 5600 Tennyson Pkwy, Suite 190, Plano, TX 75024.

by the Purchaser (as defined below) and the proposed cure amounts with respect thereto (the "Cure Cost"), all as more fully set forth herein; and the Court being satisfied that the relief requested in the Sale Motion is necessary and in the best interests of the Debtors and their estates; and it appearing that sufficient notice of the Sale Motion has been given, and that no other or further notice is required; and this Court having reviewed the Sale Motion and having considered the evidence and arguments presented at a hearing on July 27, 2023 (the "Sale Hearing"); this Court having determined that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; the Court has confirmed that the parties appearing at the Sale Hearing have consented to the entry of this Sale Order and specifically agreed to the term set forth in Paragraphs 45-49 below; and after due deliberation and sufficient cause appearing therefor, the Court hereby finds as follows:[3]

A.    **Jurisdiction and Venue**.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O).

B.    **Notice**.  As evidenced by the certificates of service filed with the Court, proper, timely, adequate, and sufficient notice of (a) the Sale Motion, (b) the sale of the Purchased Assets (as defined below) to the Purchaser (as defined below) pursuant to the APA (as defined below) and the transactions contemplated in connection therewith (the "Sale"), (c) the assumption and assignment to the Purchaser of certain executory contracts and unexpired leases as described and identified more fully in the APA or as designated for assumption in accordance with the terms of the APA (collectively, the "Assigned Contracts"), (d) the Cure Costs, and (e) the Sale Hearing has

---

[3] The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

4875-2870-3856

been provided by the Trustee to each party entitled thereto in accordance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules. A reasonable opportunity to object or be heard regarding the relief requested in the Sale Motion has been afforded to all interested persons and entities. Exigent circumstances existed and the sale on expedited notice was proper under the circumstances. The four contracts designed by Purchaser as Assigned Contracts as of the entry of this Sale Order are 1st Community Federal Credit Union, BluePrint to Practice Automation, i2C, Inc., and Magnetic Ticket & Label Corp.

C.      All non-Debtor counterparties to the Assigned Contracts have had an adequate opportunity to object to the assumption and assignment of the Assigned Contracts, including the Cure Costs.

D.      The notice described in the foregoing paragraphs is good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Sale (and the transactions contemplated in connection therewith), the assumption and assignment to the Purchaser of the Assigned Contracts, the Cure Costs, the Auction, the Sale Hearing, and all deadlines related thereto is or shall be required.

E.      **APA**.  The assets being sold to the Purchaser (the "Purchased Assets," as defined in the APA as the "Assets"), as more fully described in that certain Asset Purchase Agreement between the Trustee, on behalf of the Debtors (collectively, the "Sellers") and CURevl Assets 2, LLC (the "Purchaser"), pursuant to which the Sellers have agreed to sell the Purchased Assets to the Purchaser, constitute property of the bankruptcy estates and title thereto is vested in the bankruptcy estates, within the meaning of section 541 of the Bankruptcy Code. Purchaser is a wholly owned subsidiary of secured creditor CURevl Capital LLC ("Capital"), which, in turn, is a wholly owned subsidiary of CU REVL LLC ("CU REVL" and, collectively with Capital and the

4875-2870-3856

Purchaser, the "CURevl Entities"). A form of the asset purchase agreement approved hereunder is attached hereto as **Exhibit 1** (the "APA").[4]

F.   **The Sale Process**. The Sale is duly authorized pursuant to sections 363(b)(1) and 363(f) of the Bankruptcy Code and rule 6004(f) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"). As demonstrated by (i) the testimony and other evidence adduced at the Sale Hearing, (ii) the representations of counsel made on the record at the Sale Hearing and (iii) the docket of this case, the Trustee has exercised reasonable business judgment to determine the best value for the Purchased Assets, and has conducted all aspects of the Sale process at arms'-length, in good faith, and in compliance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules. The sale process undertaken by the Trustee and her professionals with respect to the Purchased Assets has been adequate and appropriate under the circumstances and reasonably calculated to maximize value for the benefit of all stakeholders. The Sale Motion was duly noticed, and is substantively and procedurally fair to all parties, and, through such efforts, the Trustee: (a) afforded interested potential purchasers a full, fair, and reasonable opportunity to submit their highest or otherwise best offer to purchase the Purchased Assets; (b) provided potential purchasers, upon request, sufficient due diligence information to enable them to make an informed judgment on whether to make an offer for on the Purchased Assets; (c) considered any interested parties' offers; and (d) conducted the sale process in a diligent, non-collusive, fair, and good faith manner.

G.   **Business Justification**. The Trustee has articulated good and sufficient business reasons for the Court to: (i) approve the APA, and, subject to the terms of this Sale Order, authorize the Trustee to take all actions to consummate the Sale, including the sale of the Purchased Assets to the Purchaser, including its permitted assigns pursuant to the terms of the APA; (ii) authorize

---

[4] All capitalized terms used but not defined in this Sale Order shall have the meaning ascribed to them in the APA.

4875-2870-3856

and approve the assumption or assumption and assignment of the Assigned Contracts as set forth herein and in the APA on the Closing Date (defined below); and (iii) authorize and approve the assumption of the Assumed Liabilities as set forth in the APA.  Entry into the APA and consummation of the Sale are sound exercises of the Trustee's business judgment, and such acts are in the best interests of the bankruptcy estates, their creditors, and all parties in interest.

H.    The Trustee has demonstrated compelling circumstances for a sale on an expedited basis and a good, sufficient, and sound business purpose for:  (i) the sale of the Purchased Assets outside of the ordinary course of business pursuant to Bankruptcy Code section 363(b) because the Debtors are the subject of these Chapter 7 cases, as a result of the entry of orders for relief following the filing of involuntary petitions in these cases; and (ii) the immediate consummation of the APA as the Purchaser would like to obtain the Purchased Assets while they still have value that can be used to benefit creditors in these Chapter 7 cases.  Such circumstances and purposes include:  (a) the Court's entry of orders for relief in these cases, causing disruption to the Debtors' business and lost value of the Purchased Assets; (ii) the APA and the closing of the Sale on an expedited basis present the best opportunity to realize the highest value for the Purchased Assets before further erosion of value; (iii) the APA and the Sale of the Purchased Assets to the Purchaser provide greater value to the estates than any other efforts by the Trustee to monetize such Purchased Assets in the near term; and (vi) the Purchaser would not agree to purchase the Purchased Assets pursuant to the terms of the APA and this Sale Order if the Purchased Assets remained subject to higher or better offers after the entry of this Sale Order.  To maximize the value of the Purchased Assets and preserve the viability of the operations on a go forward basis to which the Purchased Assets relate, it is essential that the Sale occur within the time constraints set forth

4875-2870-3856

in the APA and this Sale Order and that the Purchaser be protected against any further offers for the Purchased Assets.

      I.      **Good Faith**.  The APA was negotiated, proposed, and is undertaken by the Trustee and the Purchaser at arms'-length, without collusion or fraud, and in good faith within the meaning of Bankruptcy Code section 363(m).  The Purchaser recognized that the Trustee was free to deal with any other party interested in acquiring the Purchased Assets, and agreed to, and did, subject its proposals to the higher or better offers.  As established by the record of the Sale Hearing, the Trustee and the Purchaser have complied with applicable provisions of the Bankruptcy Code and Bankruptcy Rules in all material respects.  The Trustee afforded a full, fair, and reasonable opportunity for any entity or person to make a higher or otherwise better offer to purchase the Purchased Assets.  Neither the Trustee, nor the Purchaser, nor any affiliate of the Purchaser has engaged in any conduct that would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code.  As a result of all of the foregoing, the Purchaser is entitled to the protections of Bankruptcy Code section 363(m), including in the event this Sale Order or any portion thereof is reversed or modified on appeal, and otherwise has proceeded in good faith in all respects in connection with these cases.  The APA was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.

      J.      At all times relevant hereto, the Trustee has negotiated and otherwise dealt with Purchaser at arms'-length through its independent officers and representatives.

      K.      **Authority**.  Upon entry of this Sale Order, the Trustee is and shall be authorized and empowered to execute the APA and consummate the transactions contemplated therein.

4875-2870-3856

L.      **Highest and Otherwise Best Offer**.   The total consideration provided by the Purchaser for the Purchased Assets represents the highest and best offer received by the Trustee, and the amount of aggregate consideration provided by the Purchaser to the Trustee pursuant to the APA constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, applicable state laws, including, without limitation, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and any other such applicable laws, and may not be avoided under Bankruptcy Code section 363(n) or any provision of chapter 5 of the Bankruptcy Code or under any other law of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law.   No other person or entity or group of persons or entities has offered to purchase the Purchased Assets for an amount of aggregate consideration that would provide greater value to the bankruptcy estates than the Purchaser.   The Trustee's determination that the APA constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Trustee's business judgment.   The Court's approval of the Sale Motion, the Sale, and the APA, and the immediate consummation thereof, is in the best interests of the bankruptcy estates, their creditors, and all other parties in interest.

M.      **Valid Transfer**.   As of the Closing, pursuant and subject to the terms of the APA, the transfer of the Purchased Assets and the Sale will effect a legal, valid, enforceable, and effective transfer of the Purchased Assets and will vest the Purchaser with all of the Debtors' right, title, and interest in the Purchased Assets, free and clear of all Liens (except for Permitted Liens) and Liabilities (other than Assumed Liabilities).

N.      **Free and Clear**.   The Purchaser would not have entered into the APA and would not have consummated the Sale, thus adversely affecting the Debtors, their estates, and their

7

4875-2870-3856

creditors, unless both (i) the Sale and (ii) the assumption and assignment of the Assigned Contracts to the Purchaser were free and clear of all Liens (except for Permitted Liens) and Liabilities (other than Assumed Liabilities).

O.      **Satisfaction of 363(f) Standards**.  The Trustee may sell the Purchased Assets free and clear of all Liens (except for Permitted Liens) and Liabilities (other than Assumed Liabilities), because, in each case, one or more of the standards set forth in section 363(f)(l)–(5) of the Bankruptcy Code has been satisfied.  All parties in interest, including, without limitation, any holders of Liens, claims (as defined in the Bankruptcy Code), encumbrances, and other interests and any non-Debtor counterparties to the Assigned Contracts, that did not object, or who withdrew their objection, to the Sale, the Sale Motion, the assumption and assignment of the applicable Assigned Contract, including the associated Cure Cost, have consented to the relief granted herein pursuant to section 363(f)(2) of the Bankruptcy Code.  For the avoidance of doubt, the Permitted Liens include liens held by 1st Community Federal Credit Union and CURevl Capital, LLC (the "Secured Lenders").  The Secured Lenders' Liens do not attach to the proceeds of the Sale because such obligations are being assumed by the Purchaser and the Secured Lenders are agreeing to release their claims against the estate and look to the Purchaser and the Purchased Assets after Closing.

P.      **No Successor Liability**.  Neither the Purchaser nor any of its affiliates are successors to the Debtors or their estates by reason of any theory of law or equity, and neither the Purchaser nor any of its affiliates shall assume or in any way be responsible for any Liability or obligation of any of the Debtors and/or their estates, except as otherwise expressly provided in the APA.

4875-2870-3856

Q.    **Assigned Contracts and Cure Costs**.  The Trustee has demonstrated that the assumption and assignment of the Assigned Contracts to the Purchaser in connection with the consummation of the Sale is an exercise of the Debtors' sound business judgment and is in the best interests of the bankruptcy estates, their creditors, and other parties in interest.  The Assigned Contracts being assigned to the Purchaser are an integral part of the APA and the Sale and, accordingly, the assumption and assignment of the Assigned Contracts is reasonable and enhances the value of the bankruptcy estates.  Any non-Debtor counterparty to an Assigned Contract that has not actually filed with the Court an objection to such assumption and assignment is deemed to have consented to such assumption and assignment on the terms set forth in this Sale Order and the APA.

R.    The Trustee and the Purchaser (including any designees), as applicable under the APA, have, including by way of entering into the APA, and agreeing to the provisions relating to the Assigned Contracts therein, (i) cured, or provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Assigned Contracts, within the meaning of section 365(b)(l)(A) of the Bankruptcy Code, and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assigned Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and the Purchaser (including any designees) has, based upon the record of these proceedings, provided adequate assurance of future performance of and under the Assigned Contracts, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.  No default exists in the Debtors' performance under the Assigned Contracts as of the Closing Date other than the failure to pay Cure Costs  or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.  The Purchaser's promise under

4875-2870-3856

the APA to perform the obligations under the Assigned Contracts after the Closing shall constitute sufficient adequate assurance of future performance under the Assigned Contracts being assigned to the Purchaser within the meanings of sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code. The Cure Costs are hereby found to be the sole amounts necessary to cure any and all defaults under the Assigned Contracts under section 365(b) of the Bankruptcy Code.

S.     **Opportunity to Object**. A fair and reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities.

T.     **Sale of Purchased Actions on "As Is" and "Where Is" Basis**. As is more specifically described in the APA and this Sale Order, the Purchaser has requested, and the Trustee has agreed, to sell and assign all Purchased Actions (as defined in the APA) to the Purchaser on an "as is" "where is" basis. The Sale Motion describes, and the APA contemplates, an assignment of the Purchased Actions, which is supported by valuable consideration through the APA, as demonstrated from the record. For the avoidance of doubt, Purchased Actions has the meaning expressly defined in the APA and does not include estate claims or causes of actions against the Clampitt Parties (defined below). Notwithstanding anything to the contrary herein, and for further avoidance of doubt, the Trustee retains and preserves state law causes of action, to the extent they existed as of the Petition Date, against 1st Community Federal Credit Union, BluePrint to Practice Automation, i2C, Inc., and Magnetic Ticket & Label Corp., as counterparties to Assigned Contracts, or the Assumed Debt of 1st Community Federal Credit Union. Any and all parties that are the subject or defendants of such claims retain their respective defenses of any kind, including, but not limited to, affirmative defenses and offsets of any kind.

4875-2870-3856

U.      **Fair and Equitable/Best Interest**.  Approval of the Sale and assignment of the Purchased Actions under the APA and this Sale Order is (i) fair and equitable, (ii) in the best interests of the bankruptcy estates, and (iii) falls within the reasonable range of alternative transactions or litigation possibilities.

V.      **Final Order**.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and, sufficient cause having been shown, waives any such stay, and expressly directs entry of judgment as set forth herein.  The Trustee has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale contemplated by the APA.  The Purchaser, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may consummate the Sale subject to the terms of this Sale Order.

W.      **Time is of the Essence**.  Time is of the essence for approval and consummation of the Sale.  The consummation of the Sale as soon as practicable is necessary both to preserve and maximize the value of the Purchased Assets for the benefit of the bankruptcy estates, their creditors, interest holders and all other parties in interest in the chapter 7 cases, and to provide the means for the Trustee to maximize creditor and interest holder recoveries.  Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Sale Motion is granted as set forth herein, and the Sale contemplated thereby and by the APA is approved as set forth in this Sale Order, with the APA being incorporated in this Sale Order as if fully set forth herein.

2.      All objections to the Sale Motion or the relief granted herein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled

4875-2870-3856

on the merits with prejudice.  Based on the representations of the parties appearing at the Sale Hearing, the Court approves the agreements announced at the Sale Hearing and memorialized in Paragraphs 45-49 of this Sale Order.

### Approval of the APA

3.    The APA, and all other ancillary documents, including all of the terms and conditions thereof, are hereby approved and shall be deemed assumed immediately upon entry of this Sale Order without the need for further action by any party or the Court.

4.    The "Closing Date" shall occur on or before July 31, 2023, unless this Sale Order is stayed.

5.    Pursuant to section 363(b) of the Bankruptcy Code, the Trustee is authorized and directed to execute and deliver, perform under, consummate, implement, comply with, and close fully the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale, and consummate the Sale pursuant to and in accordance with the terms and conditions of the APA and this Sale Order.  The Trustee is further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any expenses or costs that are required to be paid in order to consummate the transactions contemplated by the APA or perform their obligations under the APA.

6.    The Trustee is authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement, the APA, together with all additional instruments, documents, and other agreements that may be reasonably necessary or desirable to implement the APA, and to take all further actions as may be reasonably requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Purchased Assets, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA.

12

4875-2870-3856

7.      This Sale Order and the APA shall be binding in all respects upon the Trustee and the bankruptcy estates, successors, and assigns, all creditors of and equity holders of both Debtors, and any and all other parties in interest, including, without limitation, any and all holders of Liens (except for Permitted Liens) and Liabilities (other than Assumed Liabilities), including holders of any rights or claims based on any putative successor or transferee liability, of any kind or nature whatsoever in the Purchased Assets, all non-Debtor parties to the Assigned Contracts, and the Trustee or successor trustee or administrator appointed in these cases.  The APA and the Sale are not subject to rejection or avoidance (whether through any avoidance or recovery, claim, action, or proceeding arising under chapter 5 of the Bankruptcy Code or under any similar state or federal law or any other cause of action) by the Debtors, any chapter 7 or chapter 11 trustee of the bankruptcy estates, or any other person or entity.  The APA, this Sale Order, and the Trustee's obligations therein and herein shall not be altered, impaired, amended, rejected, discharged, or otherwise affected by any plan proposed or confirmed in these bankruptcy cases, any order confirming any plan, or any subsequent order of this Court without the prior written consent of the Purchaser.  In furtherance of the foregoing, any estate representative, including a trustee or administrator appointed in these cases, shall be obligated to comply with the preservation and production obligations of the Trustee, as Seller, set forth in the APA.  Nothing contained in any plan confirmed in these cases or the confirmation order confirming any such plan shall conflict with or derogate from the provisions of the APA or this Sale Order.  This Sale Order and the APA shall inure to the benefit of the Debtors, their estates, their creditors, the Purchaser, and their respective successors and assigns.

8.      The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in a writing signed by all parties, and

4875-2870-3856

in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the bankruptcy estates.

### Transfer of the Purchased Assets

9.      Except as expressly permitted or otherwise specifically provided for in the APA or this Sale Order, pursuant to sections 105(a), 363(b), 363(f), 365(b), 365(f) of the Bankruptcy Code or any other applicable section of the Bankruptcy Code, upon the Closing, the Purchased Assets shall be transferred to the Purchaser on an "as is" and "where is" basis, and such transfer shall constitute a legal, valid, binding, and effective transfer of the Purchased Assets free and clear of all Liens (except for Permitted Liens) and Liabilities (other than Assumed Liabilities), pursuant to section 363(f) of the Bankruptcy Code.  Upon the Closing, the Purchaser shall take title to and possession of the Purchased Assets subject only to the Assumed Liabilities and Permitted Liens. For the avoidance of doubt, as set forth more fully in the APA, the cash held in the Debtors' deposit accounts as of the Closing Date are Excluded Assets.  Wells Fargo Bank, N.A., and any other institution holding deposit accounts for the Debtors, shall continue to maintain such deposit accounts prior to and after Closing, and shall cooperate with the Purchaser and the Trustee to ensure that: (a) consistent with Article II of the APA, the cash held in the Debtors' deposit accounts is turned over to the Trustee within ten (10) business days after Closing, or as soon as reasonably practicable thereafter; and (b) no party impedes or interferes with the collection of receivables prior to or after Closing.

10.     Except as expressly permitted or otherwise specifically provided by the APA or this Sale Order, all persons and entities (as defined in section 101(15) of the Bankruptcy Code), including, but not limited to, all lenders, debt security holders, equity security holders, committees (statutory or otherwise), governmental, tax, and regulatory authorities, parties to executory

14

4875-2870-3856

contracts and unexpired leases, creditors holding Liens or Liabilities of any kind or nature whatsoever against or in the Debtors or any of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Debtors' businesses prior to the Closing, or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting any Liens (except for Permitted Liens) or Liabilities (other than Assumed Liabilities), against the Purchaser and its successors, designees, assigns, or property, or the Purchased Assets conveyed in accordance with the APA.  On or before the Closing Date, each of the Debtors' creditors is authorized to execute such documents and take all other actions as may be deemed by the Purchaser to be reasonably necessary or desirable to release Liens (except for Permitted Liens) and Liabilities (other than Assumed Liabilities) on the Purchased Assets, if any, as provided for herein, as such Liens or Liabilities may have been recorded or may otherwise exist.

11.     The transfer of the Purchased Assets to the Purchaser pursuant to the APA shall constitute a legal, valid, and effective transfer of the Purchased Assets on the Closing Date, and shall vest the Purchaser with all of the Debtors' rights, title, and interests in the Purchased Assets free and clear of all Liens (except for Permitted Liens) and Liabilities (other than Assumed Liabilities), whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether derivatively, vicariously, as transferee or successor or otherwise, of any kind, nature, or character whatsoever, including, but not limited to, those Liens (except for Permitted Liens) and Liabilities (other than Assumed Liabilities) arising out of or on account of: (a) any employment, collective bargaining, or other labor agreements or the termination thereof; (b) any defined benefit, multiemployer, defined contribution, retirement,

15

4875-2870-3856

medical benefit, or any other employee pension, welfare, compensation, or other employee benefit plans, agreements, practices, or programs, including, without limitation, any pension plan of or related to any of the Debtors or any of Debtors' affiliates or predecessors or any current or future employees of any of the foregoing, or the termination of any of the foregoing; (c) the Debtors' business operations or the cessation thereof; (d) any litigation involving one or more of the Debtors; (e) the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) and any other federal or state environmental health and safety laws and regulations; (f) any employee, benefit, worker's compensation, occupational disease, or unemployment or temporary disability related Liability, including, without limitation, Liabilities that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Act of 1988, (vii) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) the Multiemployer Pension Plan Amendments Act of 1980, (xi) state discrimination laws, (xii) state unemployment compensation laws or any other similar state and local laws, (xiii) state workers' compensation laws, or (xiv) any other state, local, or federal employee benefits laws, regulations, or rules, or other state, local, or federal laws, regulations, or rules relating to any employment with any of the Debtors or any of their respective predecessors; (g) any antitrust laws; (h) any product liability or similar laws, whether state or federal or otherwise; (i) any bulk sales or similar laws; (j) any federal state, or local tax statutes, regulations, or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (k) any common law doctrine of *de facto*

16

merger or successor or transferee liability, successor-in-interest liability theory, or any other theory of or related to successor liability.

12.    All persons and entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to immediately surrender possession of such Purchased Assets to the Purchaser or its assignee.  Purchaser hereby agrees that, notwithstanding the definitions in the APA, the Purchased Assets shall not include (and the Excluded Assets shall include) the estate's interest in Kind Health Holdings, Inc., the prepaid insurance, prepaid airline miles and the Tag Payroll Deposit.

13.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Liens in the Purchased Assets conveyed pursuant to the APA and this Sale Order has not delivered to the Trustee and the Purchaser, prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens which the person or entity has with respect to the Purchased Assets or otherwise, then (a) the Trustee is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets, and (b) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens in the Purchased Assets of any kind or nature whatsoever.  For the avoidance of doubt, to the extent necessary, upon consummation of the transactions set forth in the APA, the Purchaser is authorized to file termination statements, lien terminations, or other amendments in any required jurisdiction to remove and record, notice filings, or financing statements recorded to attach, perfect, or otherwise

17

notice any Lien that is extinguished or otherwise released pursuant to this Sale Order under section 363 of the Bankruptcy Code.

### Ad Valorem Taxes

14.     With the exception of the 2023 ad valorem personal property taxes, the Sale of the Purchased Assets approved herein shall vest the Purchaser with all of the Debtors' right, title, and interest in the Purchased Assets free and clear of ad valorem, property, and similar tax liens for any tax years, which ad valorem, property, and similar tax liens shall attach to the portion of the Sale proceeds ultimately attributable to the property against which they assert a lien, in the order of their priority, with the same validity, force, and effect that they now have as against such Purchased Assets, subject to any claims and defenses the Trustee and estates may possess with respect thereto.

### Assumption and Assignment of Assigned Contracts and Assumed Liabilities

15.     The Trustee is hereby authorized to and shall, in accordance with sections 105(a) and 365 of the Bankruptcy Code, (a) assume the Assigned Contracts, (b) assign the Assigned Contracts to the Purchaser, effective upon and subject to the occurrence of the Closing, free and clear of all Liens (except for Permitted Liens) and Liabilities (other than Assumed Liabilities), which Assigned Contracts by operation of this Sale Order shall be deemed assumed and assigned effective as of the Closing, and (c) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Purchaser. The Purchaser's assumption of the Assigned Contracts on the terms set forth in the APA is hereby approved, and all requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption and assignment of the Assigned Contracts by the Debtors to the Purchaser have been satisfied.

4875-2870-3856

16.     Any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract on the consent of the non-Debtor counterparty thereto or allow the non-Debtor party to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, shall constitute unenforceable anti-assignment provisions that are void and of no force and effect.

17.     Upon assignment to the Purchaser, (a) the Assigned Contracts shall remain in full force and effect for the benefit of the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, limits, or conditions such assignment or transfer; and (b) in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title, and interest of the Debtors in each Assigned Contract free and clear of Liens (except for Permitted Liens) and Liabilities (other than Assumed Liabilities).

18.     The Purchaser is hereby substituted for all purposes as a party to all Assigned Contracts in the place of any applicable Debtor or Debtors party to any such Assigned Contracts, and the Purchaser shall have any and all rights and benefits of the respective Debtor or Debtors under all such Assigned Contracts without interruption or termination of any kind, and all terms applicable to such Debtor or Debtors shall apply to the Purchaser as if such Assigned Contracts were amended to replace such Debtor or Debtors with the Purchaser.  The Trustee agrees to provide reasonable cooperation with the Purchaser to transition any Assigned Contracts consistent with this Paragraph 18 and the APA.

19.     All defaults or other obligations of the Debtors under the Assigned Contracts arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) as to which no objections were interposed and remain pending as of the date of this Sale Order are deemed satisfied by the payment of the proposed amount necessary, if any, to cure all monetary defaults, if any, under such Assigned Contract in those amounts set forth in the APA, and which were satisfied, or shall be satisfied as soon as practicable, as provided in the APA.

20.     For all Assigned Contracts, the Purchaser, as applicable under the APA, are authorized and directed to pay all Cure Costs, or in an amount agreed to with a Counterparty, upon the later of (a) the Closing, (b) the time agreed to with a Counterparty, or (c) for any Assigned Contract for which a timely filed and served objection (an "Assumption Objection") has been filed to the assumption and assignment of such agreement or the Cure Costs relating thereto and such objection remains pending as of the date of this Sale Order, the resolution of such Assumption Objection by settlement or order of this Court.  If no out-of-court resolution can be reached, either party may request a hearing on no less than 14 days' notice to the other party.

21.     In accordance with the APA, the Purchaser may add any executory contract or unexpired lease to the Assigned Contract list after Closing Date, provided the Trustee provides notice and an opportunity to be heard consistent with the APA.

22.     Each Counterparty to an Assigned Contract is hereby forever barred, estopped, and permanently enjoined from asserting against the Debtors, the Purchaser, or any of their affiliates (including any designees), or the property of any of them, any default, breach, claims of pecuniary losses existing as of the Closing or by reason of Closing, action, liability, or other cause of action existing as of the date of the Sale Hearing whether asserted or not, or, against the Purchaser or any

20

of its affiliates (including any designees), any counterclaim, defense, setoff, or any other claim asserted or assertable against the Debtors.  Each non-Debtor party to an Assigned Contract is hereby forever barred, estopped, and permanently enjoined from asserting any objection to the assumption and assignment of such non-Debtor party's Assigned Contract including, without limitation, that its consent is necessary for such assumption and assignment.

23.    Subject to the qualifications enumerated this Court's findings in Paragraph P above and the limitations specified in the APA, Purchaser shall be responsible for paying or otherwise satisfying all Assumed Liabilities contemplated under the APA.

24.    Purchaser shall grant and execute and deliver to the Secured Lenders liens on the Purchased Assets to secure the Assumed Liabilities of the Secured Lenders, with the lien(s) granted to 1CFCU having the first priority.  The Assumed Liabilities of Paul Clampitt, Alloy Insurance Parties, ISI Holdings and any other related companies other than the CURevl Entities (collectively, the "Clampitt Parties") shall be subordinated to the rights, claims and liens of the Secured Lenders, and such assumption by the Purchaser hereunder shall be in exchange for the Clampitt Parties' agreements set forth in paragraph 47 below.  Notwithstanding any assumptions, releases or waiver affecting the Secured Lenders or Clampitt Parties under this Sale Order or the APA, the Secured Lenders and Clampitt Parties, each and collectively, retains its respective defenses of any kind, including, but not limited to, affirmative defenses and offsets of any kind, with respect to any claims against the foregoing held or brought by any of the bankruptcy estates, their successors or assigns, or any creditor or interest holder of the Debtors.

### Additional Provisions

25.    The Purchaser shall be authorized, as of the Closing Date to:  (a) operate any property or any other business transacted with respect to the Purchased Assets under all licenses,

21

4875-2870-3856

permits, registrations, and governmental authorizations and approvals; and (b) obtain and pay any and all fees associated with any lawful license or permit, until such time that the Purchaser is able to cause said licenses, permits, registrations, or governmental authorizations or approvals to be transferred to the Purchaser or until such time that the Purchaser is able to obtain replacement licenses and permits.

26.     The Trustee shall:  (a) be authorized as of the Closing Date to assist the Purchaser in the effective transition of the Debtor's Purchased Assets and related business operations; (b) cooperate in the transfer of all licenses and permits to the Purchaser; (c) execute and deliver such documentation and certificates as are necessary or required to operate, transfer, or cancel the licenses and permits; and (d) not engage in any acts that would interfere with the Purchaser's operation, transfer, or cancellation of licenses or permits.  All such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Purchaser.

27.     The Purchaser shall not be deemed to be a joint employer, single employer, co-employer, or successor employer with the Debtors for any purpose or under the laws of the United States, any state, territory, or possession thereof, and the Purchaser shall not have any obligation to pay any past wages, benefits, or severance pay or extend or make any benefits or benefit programs, including, without limitation, the Consolidated Omnibus Budget Reconciliation Act of 1985 or any similar laws or regulations, to any of the Debtors' employees or former employees, including, without limitation, any such employees who may become employees of the Purchaser.

28.     Notwithstanding anything to the contrary in this Sale Order or the APA, the rights of insured persons and entities, if any, to access any insurance policies or the proceeds thereof (collectively, the "Policies") in their respective capacities as insureds thereunder, including those

4875-2870-3856

under which the Debtors are insured, shall not be affected or diminished by this Sale Order, and the rights, defenses and claims of the Debtors, their Estates, any representative of the Estates, and insurers are reserved with respect thereto; *provided* that nothing in the Sale Motion, APA, or this Sale Order alters or amends the terms and conditions of the Policies, enjoins insurers or relieves the Debtors or any insurers of any of their obligations thereunder.

29.    This Sale Order: (a) shall be effective as a determination that, upon the Closing, all Liens (except for Permitted Liens) and Liabilities (other than Assumed Liabilities) existing as to the Purchased Assets, including the Purchased Actions, prior to the Closing have been unconditionally released, discharged, and terminated and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, foreign, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to, the Purchased Assets, including the Purchased Actions.

30.    Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale transaction contemplated by the APA.

31.    No governmental unit may revoke or suspend any right, license, copyright, patent, trademark or other permission relating to the use of the Purchased Assets sold, transferred, or

4875-2870-3856

conveyed to the Purchaser on account of the filing or pendency of the case or the consummation of the sale of the Purchased Assets.

32.     Neither the Purchaser nor any of its affiliates are or shall be deemed, as a result of the consummation of the Sale contemplated herein, to:  (a) be legal successors to the Debtors or their estates by reason of any theory of law or equity; (b) be an affiliate of any of the Debtors; (c) have, de facto or otherwise, merged with or into the Debtors; (d) be an alter ego or a mere continuation or substantial continuation or successor of the Debtors in any respect; or (e) be a joint employer or co-employer with, or successor employer, of the Debtors.  Except as expressly permitted or otherwise specifically provided for in the APA or this Sale Order, neither the Purchaser nor any of its affiliates shall (y) assume or in any way be responsible for any Liability or obligation of any of the Debtors and/or their estates or (z) have any liability or responsibility for any Liability or other obligation of the Debtors' arising under or related to the Purchased Assets or otherwise. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the APA, the Purchaser and its affiliates shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and the Purchaser and its affiliates shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of warranty, product liability, environmental, successor or transferee liability, labor law, de facto merger, or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' businesses prior to the Closing.

4875-2870-3856

33.     Following the Closing, no holder of a Lien (except for Permitted Liens) or a Liability (other than Assumed Liabilities) in the Purchased Assets (including the Purchased Actions) shall interfere with the Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to such Lien, Liability, or any actions that the Trustee may take in these cases or any successor cases.

34.     The Purchaser is a good faith purchaser and is hereby granted and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code to a good faith buyer, including, without limitation, with respect to the transfer of the Assigned Contracts as part of the Sale of the Purchased Assets pursuant to section 365 of the Bankruptcy Code and this Sale Order.  CU REVL, LLC guaranties the Purchaser's obligations to pay of the Cash Purchase Price, Cure Costs and allowed administrative expenses more fully described in Section 2.4 of the APA and will make sure that the Purchaser has sufficient cash available to pay such obligations contemplated under the APA.

35.     Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Sale Order are hereafter reversed, modified, or vacated by a subsequent order of the Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any transfer under the APA or obligation or right granted pursuant to the terms of this Sale Order (unless stayed pending appeal), and, notwithstanding any reversal, modification, or vacatur, the validity and enforceability of any transfer under the APA or obligation or right granted pursuant to the terms of this Sale Order shall be governed in all respects by the original provisions of this Sale Order and the APA, as applicable.

36.     This Court retains jurisdiction to enforce and implement the terms and provisions of the APA, all amendments thereto, any waivers and consents thereunder, and each of the

4875-2870-3856

agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to:  (a) compel delivery of the Purchased Assets or performance of other obligations owed to the Purchaser; (b) resolve any disputes arising under or related to the APA, except as otherwise provided therein; (c) interpret, implement, and enforce the provisions of this Sale Order; and (d) protect the Purchaser and its affiliates against (i) any Liens in or Liabilities of the Debtors or the Purchased Assets of any kind or nature whatsoever and (ii) any creditors or other parties in interest regarding the turnover of the Purchased Assets (including the Purchased Actions) that may be in their possession.

37.    The so-called "bulk sale" laws or any similar law of any applicable state or other jurisdiction are waived or inapplicable to the Sale.

38.    Except as otherwise expressly provided in the APA, the Purchaser shall have no liability to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any and all pension plans), or any other payment with respect to employees or former employees of the Debtors. Except as otherwise expressly provided in the APA, the Purchaser shall have no liability with respect to any collective bargaining agreement, employee pension plan, employee welfare or retention, benefit, and/or incentive plan to which any Debtor is a party and relating to the Purchased Assets (including, without limitation, arising from or related to the rejection or other termination of any such agreement), and the Purchaser shall in no way be deemed a party to or assignee of any such agreement, and no employee of the Purchaser shall be deemed in any way covered by or a party to any such agreement, and except as otherwise expressly provided in the APA, all parties to any such agreement are hereby enjoined from asserting against the Purchaser any and all Claims arising from or relating to the APA.

4875-2870-3856

39.     The failure to specifically include any particular provision of the APA or other related documents in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APA and other related documents be authorized and approved in their entirety.

40.     The failure to include specifically any particular provisions of the APA or any of the documents, agreements, or instruments executed in connection therewith in this Sale Order shall not diminish or impair the force of such provision, document, agreement, or instrument, it being the intent of the Court, the Trustee, and the Purchaser, that the APA and each provision, document, agreement, and instrument be authorized and approved in its entirety with such amendments thereto as may be made in conformity with this Sale Order prior to the Closing Date.

41.     To the extent of any conflict between the APA and this Sale Order, the terms and provisions of this Sale Order shall govern.

42.     Nothing contained in any plan confirmed in these cases, the order confirming any plan, or any order in these cases shall alter, conflict with, or derogate from the provisions of the APA or this Sale Order, and to the extent of any conflict or derogation between this Sale Order or the APA and such future plan or order, the terms of this Sale Order and the APA shall control.

43.     The Court shall retain exclusive jurisdiction to enforce the terms and provisions of the APA and this Sale Order in all respects and to decide any disputes concerning this Sale Order and the APA, or the rights and duties all Persons hereunder or thereunder, as applicable, or any issues relating to this Sale Order or the APA, including, without limitation, the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Purchased Assets and any Assigned Contracts, and all issues and disputes existing in connection with the

4875-2870-3856

relief authorized herein, inclusive of those concerning the transfer of the Purchased Assets free and clear of all Liens and Liabilities.

44.    Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any entity obtaining a stay pending appeal, the Debtors and the Purchaser are free to close the Sale under the APA in accordance with its terms at any time on or prior to July 31, 2023.

### Agreed Terms Announced at the Sale Hearing

45.    The Trustee agrees not to object to any proofs of claim filed in these bankruptcy cases by Jeffrey Blankinship, Courtney Blankinship, SNotes Investments, LLC or SNotes Real Estate Holdings, LLC (collectively, the "Blankinship Parties"), provided they are consistent with the Schedules of Assets and Liabilities filed in these bankruptcy cases.

46.    The Blankinship Parties agree not to object to any motion filed by the Trustee to substantively consolidate these cases, provided any such motion is filed after the Closing Date.

47.    Consistent with Paragraph 24 above, the Clampitt Parties assert that they hold claims against the Debtors' estates in the amount of $290,000 and these liabilities are being assumed in full by the Purchaser and are deemed Assumed Liabilities under the APA and Sale Order.  Therefore, the Clampitt Parties agree not to file proofs of claims in these cases and, as such, agree to release the bankruptcy estates from any such claims.  The payment of such Assumed Liabilities to the Clampitt Parties shall be documented by the Purchaser and Clampitt Parties consistent with this Sale Order and the APA.  Nothing in this Sale Order shall be construed as a release or waiver of any ownership interests held by the Clampitt Parties in the Debtors and any rights and claims arising from, or related to, those interests, and the Clampitt Parties reserve any and all rights not expressly waived or released in this Sale Order.

4875-2870-3856

48.    Nothing in this Sale Order shall affect, modify, restrict or restrain the rights, remedies or defenses as between the Blankinship Parties and 1st Community Federal Credit Union. The Blankinship Parties and 1st Community Federal Credit Union hereby agree to a standstill of any and all litigation, arbitration, enforcement actions and collection remedies for a period of 120 days after the entry date of this Sale Order.  During such standstill period (which may be extended by agreement of the Blankinship Parties and 1st Community Federal Credit Union), such parties shall use good faith best efforts to select a mediator, attend mediation and attempt to resolve the disputes between such parties.

49.    The Trustee, for both Debtors and their respective bankruptcy estates, hereby releases each and all of the CURevl Entities from any and all claims, demands, debts, liabilities, contracts, obligations, accounts, torts, causes of action, or claims for relief of any kind or nature, whether known or unknown, whether suspected or unsuspected by the Trustee.  The releases contained in this Paragraph 49 apply to all claims which Trustee may now have or has had against any of the CURevl Entities as a result of acts occurring on or before the date hereof, whether or not known or suspected by the parties hereto, the Trustee, on behalf of the Debtors and their bankruptcy estates, does hereby waive the right to claim otherwise.  Notwithstanding the foregoing, nothing in this Paragraph 49 shall release CU REVL and the Purchaser from their respective obligations set forth in this Sale Order or the APA.

50.    The Court shall retain jurisdiction over the interpretation or implementation of any and all provisions of this Sale Order.

Signed on 7/31/2023

_Brenda T. Rhoades_      ST    -

HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE

4875-2870-3856

**<u>Exhibit 1</u>**

**APA**

Execution Copy

**ASSET PURCHASE AGREEMENT**

**BY AND AMONG**

**MICHELLE CHOW, CHAPTER 7 TRUSTEE FOR HEALTHCARE PAYCARD LLC AND SMARTHEALTH PAYCARD LLC,**

**and**

**CUREVL ASSETS 2, LLC**

**DATED AS OF JULY 31, 2023**

4885-0337-8033

ARTICLE I DEFINITIONS ......................................................................................... 1
1.1  **Definitions** .............................................................................................. 1

ARTICLE II PURCHASE AND SALE .......................................................................... 6
2.1  **Purchased Assets** ..................................................................................... 6
2.2  **Excluded Assets** ....................................................................................... 7
2.3  **Nonassignable Assets; Assigned Contracts Schedule; Additional Excluded Assets** ....................................................................................... 8
2.4  **Liabilities** ................................................................................................. 9
2.5  **Purchase Price** ......................................................................................... 9
2.6  **Taxes** ........................................................................................................ 9

ARTICLE III CLOSING ............................................................................................... 9
3.1  **Closing** ..................................................................................................... 9
3.2  **Closing Deliveries** ................................................................................. 10

ARTICLE IV REPRESENTATIONS AND WARRANTIES OF SELLER.............................. 10
4.1  **Power and Authority** ............................................................................. 10
4.2  **No Transfer of Assets** ........................................................................... 11
4.3  **Title to Assets** ....................................................................................... 11
4.4  **No Other Representations or Warranties** ............................................. 11

ARTICLE V REPRESENTATIONS AND WARRANTIES OF PURCHASER ....................... 11
5.1  **Existence and Power** ............................................................................. 11
5.2  **Authorization** ........................................................................................ 11
5.3  **Enforceability** ....................................................................................... 12
5.4  **Governmental and Third Party Authorizations** .................................. 12
5.5  **Noncontravention** ................................................................................. 12
5.6  **Proceedings** ........................................................................................... 12
5.7  **Exclusivity of Representations and Warranties** ................................... 12
5.8  **Reliance** ................................................................................................. 12
5.9  **Capability**.  Purchaser is willing, authorized, capable and qualified financially, legally and otherwise, to unconditionally perform all obligations under this Agreement. .................................................... 12

ARTICLE VI COVENANTS OF PURCHASER AND SELLER ........................................... 13
6.1  **Public Announcements** ......................................................................... 13
6.2  **Tax Matters; Allocation of Purchase Price** ......................................... 13
6.3  **Cure Costs; Accrued Liabilities** .......................................................... 13
6.4  **Wrong-Pocket** ....................................................................................... 13
6.5  **Employee Matters** ................................................................................. 14
6.6  **Post-Closing Access to Documents** ..................................................... 14

ARTICLE VII SURVIVAL AND RELEASE.................................................................... 14
7.1  **Survival** ................................................................................................. 14

ARTICLE VIII MISCELLANEOUS .............................................................................. 14
8.1  **Notices** ................................................................................................... 14
8.2  **Waivers** .................................................................................................. 15

| | | |
|---|---|---|
| 8.3 | **Expenses** | 15 |
| 8.4 | **Successors and Assigns** | 15 |
| 8.5 | **Governing Law** | 15 |
| 8.6 | **Consent to Jurisdiction; Service of Process; Waiver of Jury Trial** | 15 |
| 8.7 | **Counterparts** | 16 |
| 8.8 | **No Third Party Beneficiaries** | 16 |
| 8.9 | **Entire Agreement; Amendment** | 16 |
| 8.10 | **Captions** | 16 |
| 8.11 | **Severability** | 16 |
| 8.12 | **Interpretation** | 17 |
| 8.13 | **Prevailing Party** | 17 |
| 8.14 | **Further Assurances** | 17 |
| 8.15 | **Arms Length Transaction** | 18 |
| 8.16 | **Time of Essence** | 18 |

4885-0337-8033

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (the "Agreement"), dated as of July 31, 2023, is entered into by and among Michelle Chow, solely in her capacity as the Chapter 7 trustee for Healthcare Paycard LLC and SmartHealth Paycard LLC ("Seller"), and CURevl Assets 2, LLC, a Texas limited liability company ("Purchaser"). Seller and Purchaser are sometimes individually referred to herein as a "Party" and collectively as the "Parties".

## RECITALS

A.      SmartHealth Paycard LLC, a Delaware limited liability company ("SmartHealth"), and Healthcare Paycard LLC, a Delaware limited liability company ("Healthcare", and together with SmartHealth, each a "Debtor" and collectively, the "Debtors"), are in the business of providing credit cards to consumers for payment of medical expenses (the "Business"). On April 20, 2023, involuntary petitions for bankruptcy were filed against each Debtor in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "Bankruptcy Court").

B.      On June 28, 2023, the Bankruptcy Court entered two separate Orders for Relief in an Involuntary Case with respect to the Debtors and appointed Seller as Chapter 7 Trustee for both Debtors.

C.      Seller desires to sell to Purchaser, pursuant to Section 363(f) of the Bankruptcy Code (as defined in Section 1.1) and with the approval of the Bankruptcy Court, certain assets of Debtors used in connection with or arising out of the operation of the Business, and Purchaser desires to purchase such assets from Seller, on the terms and conditions set forth in this Agreement and such Agreement is subject to Bankruptcy Court approval.

## AGREEMENTS

NOW, THEREFORE, in consideration of the foregoing premises and the representations, warranties, covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

## ARTICLE I
## DEFINITIONS

1.1      **Definitions**. When used in this Agreement, the following terms shall have the meanings assigned to them in this Section 1.1.

"1CFCU" or "1st Community" means 1st Community Federal Credit Union.

"Affiliate" means, with respect to any specified Person, any other Person directly or indirectly controlling, controlled by or under common control with such specified Person. For purposes of this definition, the terms "controlling," "controlled by," or "under common control with" shall mean the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise, or the power to elect more than fifty percent (50%) of the directors, managers, general partners, or persons exercising similar authority with respect to such Person.

"Agreement" has the meaning set forth in the Preamble hereto.

1

"Allocation" has the meaning set forth in Section 6.2.

"Ancillary Documents" means all agreements, instruments and documents delivered at the Closing pursuant to this Agreement.

"Assets" has the meaning set forth in Section 2.1.

"Assigned Contracts" has the meaning set forth in Section 2.1(c).

"Assumed Debt" means (i) all amounts owed by SmartHealth to CURevl Capital LLC pursuant to that certain Promissory Note, dated June 30, 2022, executed by SmartHealth in favor of CURevl Capital LLC, (ii) all amounts owed by Debtors to 1CFCU, including: (a) those amounts listed in 1CFCU's proofs of claims filed in the Bankruptcy Cases, which include obligations under (1) that certain Commercial Line of Credit Agreement, dated April 27, 2023, by and among Debtors and 1CFCU, (2) that certain Commercial Line of Credit Agreement, dated January 13, 2023, by and among Debtors and 1CFCU, (3) that certain Commercial Line of Credit Agreement, dated September 16, 2022, by and among Debtors and 1CFCU, and (4) that certain Commercial Line of Credit Agreement, dated January 13, 2023, by and among Debtors and 1CFCU; (b) all amounts incurred during the pendency of the Bankruptcy Cases (including any amounts advanced by 1CFCU to cover obligations of the Debtors or their bankruptcy estates), and (c) all Cure Costs; and (iii) up to $290,000 of debt and/or related liabilities owed to Paul Clampitt or his Affiliates, including, but not limited to, Alloy Insurance Partners LLC or ISI Holdings, LLC.

"Assumed Liabilities" has the meaning set forth in Section 2.4(a).

"Bankruptcy Cases" means the chapter 7 proceedings filed against Debtors in the Bankruptcy Court.

"Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time.

"Bankruptcy Court" has the meaning set forth in the Recitals.

"Bill of Sale" has the meaning set forth in Section 3.2(b)(i).

"Books and Records" means all of the books and records, in all formats (both tangible and intangible), used or maintained by or on behalf of Debtors in connection with or otherwise related to the Business, including (a) executed copies of all of the written Assigned Contracts, if any, (b) all equipment, product and other warranties pertaining to the Assets, (c) all technical information and any data, maps, computer files, diagrams, blueprints and schematics, (d) all filings made with or records required to be kept by any Governmental Entity (including all backup information on which such filings are based), (e) all research and development reports, (f) all equipment and operating logs, (g) all financial and accounting records, (h) all employment records with respect to any transferring employees, to the extent such information can be provided without violating any applicable law, rule or regulation, and (i) all creative, promotional or advertising materials.

"Business" has the meaning set forth in the Recitals.

"Business Day" means a day other than a Saturday, Sunday or other day on which commercial banks located in Dallas, Texas are authorized or required by Law to close.

"Cash Purchase Price" has the meaning set forth in Section 2.5.

2

"<u>Closing</u>" has the meaning set forth in <u>Section 3.1</u>.

"<u>Closing Date</u>" has the meaning set forth in <u>Section 3.1</u>.

"<u>Code</u>" means the Internal Revenue Code of 1986, as amended, and regulations promulgated thereunder.

"<u>Contract</u>" means any written and legally binding agreement, contract, commitment or arrangement, including all amendments and addenda thereto.

"<u>Cure Costs</u>" means all monetary Liabilities, including pre-petition monetary Liabilities, of Seller that must be paid or otherwise satisfied to cure all of Seller's monetary and other defaults under the Assigned Contracts, if any, pursuant to Section 365 of the Bankruptcy Code as provided hereunder as such amounts are determined by the Bankruptcy Court or approved pursuant to the assignment and assumption procedures provided for in the Sales Order or otherwise.

"<u>Excluded Assets</u>" has the meaning set forth in <u>Section 2.2</u>.

"<u>Excluded Contracts</u>" has the meaning set forth in <u>Section 2.2(e)</u>.

"<u>GAAP</u>" means United States generally accepted accounting principles, consistently applied, as in effect when applied by Seller.

"<u>General Enforceability Exceptions</u>" means general principles of equity and by bankruptcy, insolvency or similar Laws and general equitable principles affecting the rights of creditors generally.

"<u>Governmental Entity</u>" means (i) any nation, state, commonwealth, province, territory, county, municipality, district or other jurisdiction of any nature, foreign or domestic, (ii) any federal, state, local, municipal, or other government of the foregoing, (iii) any governmental or quasi-governmental entity of any nature (including any governmental agency, branch, department, official, or entity and any court or other tribunal) or (iv) any body (including any international or multinational body) exercising, or entitled to exercise any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature, including any arbitral tribunal.

"<u>Intellectual Property</u>" means: (a) patents, pending applications for patents and statutory invention registrations, including continuations, continuations-in-part, divisions, provisional and non-provisional applications, reexaminations, reissues and extensions; (b) trademarks, service marks, trade names, corporate names, and other indicia of source of origin, including all common law rights thereto and all goodwill associated therewith and registrations and pending applications for registration thereof; (c) works of authorship, copyrights, and all applications and registrations thereof; (d) domain name registrations; (e) trade secrets, know-how, confidential or proprietary technical, business and other information, including processes, techniques, methods, formulae, designs, product specifications, algorithms, supplier information, prospect lists, customer lists, projections, analyses, market studies and similar proprietary items that are in Seller's possession, and all rights therein and thereto; (f) inventions (whether patentable or unpatentable, and whether or not reduced to practice), invention disclosures, mask works, circuit designs and other designs, industrial design rights, discoveries, ideas, developments, data, and software; (g) all other proprietary and intangible rights; and (h) all copies and tangible embodiments thereof (in whatever form or medium).

"<u>Law</u>" means any statute, law, ordinance, code, rule or regulation of any Governmental Entity.

4885-0337-8035

"Liability(ies)" means with respect to any Person, any direct or indirect liabilities, obligations, commitments, indebtedness, claim, loss, damage, deficiency, assessment, fine, penalty, or responsibility of such Person of any kind or nature, whether fixed or unfixed, choate or inchoate, liquidated or unliquidated, secured or unsecured, asserted or unasserted, due or to become due, accrued or unaccrued, vested or unvested, executory, determined, determinable, absolute, known or unknown, contingent or otherwise, regardless of whether or not the same is required to be accrued on any financial statements of such Person.

"Lien" means, with respect to any property or asset, any mortgage, lien, pledge, security interest, hypothecation, charge or any other similar encumbrance in respect of such property or asset. For the avoidance of doubt, "Lien" shall exclude any restrictions on transfer under securities Laws, this Agreement, any Ancillary Documents and any terms and conditions of any Organizational Document of any Debtor.

"Nonassignable Asset" has the meaning set forth in Section 2.3.

"Order" means any award, injunction, judgment, decree, order, ruling, subpoena or verdict or other decision issued, promulgated or entered by any Governmental Entity of competent jurisdiction.

"Ordinary Course of Business" means, with respect to Debtors, the ordinary course of business consistent with its past custom and practice, except for consequences relating to the filing and pendency of the Bankruptcy Cases or the operations of the Business during the Bankruptcy Cases.

"Organizational Documents" means, with respect to any entity, as applicable, the certificate of incorporation, articles of incorporation, bylaws, articles of organization, partnership agreement, limited liability company agreement, formation agreement, joint venture agreement and other similar organizational documents of such entity (in each case, as amended through the date of this Agreement).

"Parties" has the meaning set forth in the Preamble hereto.

"Permit" means any authorization, approval, consent, certificate, governmental license, registration, variance, exemption, waiver, permit or franchise of or from any Governmental Entity.

"Permitted Liens" means: (a) Liens for Taxes that are not yet due and payable or that are being contested in good faith by appropriate proceedings, in each case, solely to the extent set forth on Debtors', or either of their financial statements in accordance with GAAP, or, if either or both of the Debtors do not employ GAAP, those which are kept in the Ordinary Course of Business by either or both of the Debtors; (b) statutory Liens (or contractual restatements thereof) of landlords and workers', carriers', materialmen's, suppliers' and mechanics' or other like Liens incurred in the Ordinary Course of Business; (c) Liens that will be released prior to or as of the Closing or attach to the proceeds of sale pursuant to the Sale Order; (d) purported Liens evidenced by the filing of UCC financing statements relating solely to operating leases or consignment or bailee arrangements entered into in the Ordinary Course of Business; (e) any right, interest, Lien or title of a licensor, sublicensor, licensee, sublicensee, lessor or sublessor under any license, sublicense, lease, sublease or other similar agreement or in the property being leased or licensed, but only to the extent such license, sublicense, lease, sublease or other similar agreement is assigned to Purchaser hereunder; (f) Liens securing accrued but unpaid personal property taxes for the 2023 calendar year; and (g) Liens granted in favor of any Assumed Debt and/or Assumed Liability.

"Person" means an individual, a corporation, a partnership, a limited liability company, a trust, an unincorporated association, a Governmental Entity, or any other entity or body.

"Proceeding" means any suit, litigation, arbitration or other dispute resolution proceeding before any Governmental Entity.

4

"Purchased Actions" means any preference or avoidance claims and actions of Seller, arising under Sections 544, 547, 548, 549, and 550 of the Bankruptcy Code, as against holders of Assumed Debt and counterparties to Assigned Contracts, which are 1CFCU, Blueprint to Practice Automation, i2c, Inc., Magnetic Ticket & Label Corp, CU REVL LLC, CURevl Capital LLC, provided, however, that the Purchased Actions shall not include estate claims or causes of action against Paul Clampitt, Alloy Insurance Partners, LLC or ISI Holdings, LLC.

"Purchase Price" has the meaning set forth in Section 2.5.

"Purchaser" has the meaning set forth in the Preamble hereto.

"Representatives" of any Person shall mean the directors, managers, officers, employees, consultants, financial advisors, counsel, accountants and other representatives and agents of such Person.

"Retained Liabilities" has the meaning set forth in Section 2.4(b).

"Sale Motion" means the motion for entry of a Sale Order from the Bankruptcy Court.

"Sale Order" means an Order of the Bankruptcy Court, which form is acceptable to Purchaser and Seller, and shall, among other things, (a) approve, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, (i) the execution, delivery and performance by Seller of this Agreement, (ii) the sale of the Assets to Purchaser on the terms set forth herein and free and clear of all Liens and interests (other than included in the Assumed Liabilities and Permitted Liens), and (iii) the performance by Seller of its obligations under this Agreement, (b) authorize and empower Seller to assume and assign to Purchaser the Assigned Contracts, if any, (c) find that Purchaser is a "good faith" buyer within the meaning of Section 363(m) of the Bankruptcy Code and grant Purchaser the protections of Section 363(m) of the Bankruptcy Code, (d) find that Purchaser is not a successor of Seller, (e) enjoin all Persons holding Liens, claims, and other interests, including rights or claims based on any successor or transferee liability from asserting them against Purchaser, (f) find that this Agreement was negotiated, proposed and entered into without collusion, in good faith and from arm's length bargaining positions, (g) find that Seller and Purchaser have not engaged in any conduct that would cause or permit this Agreement to be avoided under Section 363(n) of the Bankruptcy Code, (h) find that this Agreement and the transactions contemplated hereby, are binding upon, and are not subject to rejection or avoidance by, any successor in interest to the Seller, including a successor trustee, (i) find that fair and reasonably equivalent value was received in connection with this Agreement, (j) authorize each of Seller and Purchaser to execute and file termination statements, instruments of satisfaction, releases and similar documents with respect to all Liens that any Person has with respect to the assets transferred pursuant to this Agreement, (k) order that Purchaser is receiving good and marketable title to all Assets and (l) find that notice was properly given to all holders of any Lien or interest, and to all counterparties to Assigned Contracts, if any.

"Seller" has the meaning set forth in the Preamble hereto.

"Seller's Knowledge" or any similar phrase means the actual, current knowledge of Michelle Chow, in her capacity as chapter 7 trustee for the Debtors and/or her Representative. For the avoidance of doubt, none of such individuals shall have any personal liability or obligations regarding such knowledge.

"Tax" or "Taxes" means all U.S. federal, state, provincial, local and foreign income, profits, franchise, license, gross receipts, occupation, premium, windfall profits, environmental, customs, duties, capital stock, severance, stamp, payroll, sales, employment, unemployment, disability, use, ad valorem, recapture, unclaimed property, escheat, personal and real property, withholding, excise, production, transfer, alternative minimum, registration, value added, occupancy, estimated and other taxes, charges,

fees, levies, or other like assessments, including any interest, penalty, or addition thereto, whether disputed or not.

"Tax Returns" any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

"Transfer Taxes" means sales, use, transfer, real property transfer, recording, documentary, stamp, registration and stock transfer Taxes and any similar Taxes.

"U.S." or "United States" means the United States of America.

## ARTICLE II
## PURCHASE AND SALE

2.1    **Purchased Assets**. Upon the terms and subject to the conditions of this Agreement, at the Closing, Seller shall sell, transfer, assign, convey and deliver to Purchaser, and Purchaser shall purchase from Seller, free and clear of all Liens other than Permitted Liens, all of Seller's right, title and interest in and to all of the Debtors' property and assets described in this Agreement, real, personal or mixed, tangible and intangible, of every kind and description, held for use or used in the Business, wherever located (collectively, the "Assets"), including all of the following (but excluding all of the Excluded Assets):

(a)    all accounts and notes receivable (whether current or non-current) and all causes of action specifically pertaining to the collection of the foregoing, in each case to the extent arising exclusively out of the operation of the Business;

(b)    all tangible personal property, including computer hardware, manufacturing equipment, office equipment, accessories, machinery, furniture, supplies, goods and fixtures owned by any Debtor;

(c)    all Contracts that are listed on Schedule 2.1(c) ("Assigned Contracts"), if any, subject to the provisions of Section 2.3.  Furthermore, if it is discovered that a Contract should have been listed on Schedule 2.1(c) but was omitted therefrom (an "Omitted Contract"), Seller shall, promptly following discovery thereof (but in no event later than three (3) Business Days after such discovery), (A) notify Purchaser in writing of such Omitted Contract and the corresponding related Cure Costs thereof (if any) and (B) if requested by Purchaser in writing, file a motion with the Bankruptcy Court on notice to the counterparties to such Omitted Contract seeking entry of an order fixing the Cure Costs and approving the assumption and assignment of such Omitted Contract in accordance with this Section 2.1(c) (provided, that no Omitted Contract shall be assumed by and assigned to Purchaser unless such Omitted Contract shall be expressly accepted at such time in writing by Purchaser as an Assigned Contract, and approved by appropriate order of the Bankruptcy Court);

(d)    except to the extent expressly enumerated as an Excluded Asset, all of Debtors' rights relating to deposits and prepayments with respect to purchase orders or other Contracts included in the Assigned Contracts, if any;

(e)    the Permits, to the extent transferrable and assignable;

(f)    all warranties (express and implied) that continue in effect with respect to any Asset (including, without limitation, warranties provided for under any Assigned Contract, if any), to the extent transferrable and assignable;

6

(g)    all intangible personal property (including Intellectual Property) owned or held by any Debtor to the extent used exclusively in connection with the Business, including with respect to all existing products and all products in development, but in all cases only to the extent of such Debtor's interest and only to the extent transferable and assignable including, without limitation, the goodwill of the Business, processes, trademarks, trade names, service marks, domain names, catalogues, customer lists and other customer data bases, advertising materials, software programs, and telephone numbers identified with the Business;

(h)    all deposit or other bank accounts used by the Debtors in the Ordinary Course of Business, provided however that, consistent with <u>Section 2.2(k)</u>, the Seller shall have the right to sweep, and Seller shall be entitled to receive all funds, held in the account as of the Closing Date, and the Purchaser shall reasonably cooperate with Seller to ensure that any such funds can be transferred to the Seller within ten days of Closing, or as soon as reasonably practicable thereafter;

(i)    all Purchased Actions; and

(j)    all Books and Records (including all non-income Tax Returns with respect to the Assets or the Business, for taxable periods ending on or prior to the Closing Date), except as specifically provided in <u>Section 2.2(h)</u>; <u>provided</u>, <u>however</u>, that at or after Closing, upon request in writing by Seller and provided Seller is responsible for its own costs, Purchaser shall provide Seller with copies of all such Books and Records which Seller deems necessary to retain, including copies of QuickBooks records.

2.2    <u>**Excluded Assets**</u>. Notwithstanding anything herein to the contrary, from and after the Closing, Seller shall retain all of its right, title and interest in and to, and there shall be excluded from the sale, conveyance, assignment or transfer to Purchaser hereunder, and the Assets shall not include, the following assets and properties (such retained assets and properties being the "<u>Excluded Assets</u>"):

(a)    all rights under this Agreement and any Ancillary Document;

(b)    all of the equity interests in Debtors;

(c)    all employee benefit plans or benefit arrangements of Seller (including all trusts, insurance policies and administration service Contracts related thereto), and all assets in respect of any such employee benefit plan or benefit arrangement;

(d)    any Contracts between any Debtor, on the one hand, and any of its Affiliates, on the other hand, except any that are specifically identified as Assigned Contracts;

(e)    any Contract to which any Debtor is a party that (i) is not an Assigned Contract or (ii) is an Assigned Contract but is not assumable and assignable pursuant to the terms thereof or as a matter of applicable Law (including, without limitation, any Assigned Contract with respect to which any consent requirement in favor of the counter-party thereto is not satisfied and may not be overridden pursuant to Section 365 of the Bankruptcy Code) (collectively, "<u>Excluded Contracts</u>");

(f)    the organizational documents, minute books, member ledger, books of account or other records having to do with the limited liability company organization of Debtors, and all employee related files or records, other than records related to transferred employees, if any;

(g)    all Tax assets (including Tax refunds and prepayments) and income Tax Returns of Debtors or any of their Affiliates for any period including, with respect to the Assets or the Business, for taxable periods ending on or prior to the Closing Date;

4885-0337-8033

(h)    any Books and Records which any Debtor and/or Seller is required by applicable Law to retain; provided, however, that at or after Closing, upon request in writing by Purchaser and provided Purchaser is responsible for its own costs, Seller shall provide Purchaser with copies of all such Books and Records and any Books and Records relating solely to the Excluded Assets or Retained Liabilities;

(i)    any software or other item of intangible property (including Intellectual Property) held by any Debtor pursuant to a license or other Contract where Purchaser does not assume the underlying Contract relating to such intangible personal property at the Closing;

(j)    any patents or patent applications, including the pending patents, held by any Debtor, provided, however, that, for each patent, patent application or pending patent, the Seller shall grant the Purchaser a Patent License for such excluded patents as set forth in Section 3.2(b)(ii);

(k)    all cash held by the Seller as of the Closing Date, including all cash held in the Debtors' or the Seller's deposit accounts as of the Closing Date, but expressly excluding any uncollected receivables as of the Closing Date; and

(l)    the assets specifically set forth on Schedule 2.2.

2.3    **Nonassignable Assets; Assigned Contracts Schedule; Additional Excluded Assets.**

(a)    Nonassignable Assets. Nothing in this Agreement or the Bill of Sale or the consummation of the transactions contemplated hereby or thereby shall be construed as an attempt or agreement to assign or transfer any Asset (including any Assigned Contract, if any, or Permit) to Purchaser which by its terms or by Law is not assignable or transferable without a consent or is cancelable by a third party in the event of an assignment or transfer (a "Nonassignable Asset"), unless and until such consent shall have been obtained (including by virtue of the effect of the Sale Order rendering certain consents to be unnecessary) or Law satisfied. Seller and Purchaser shall use diligent and commercially reasonable efforts to obtain any consent that may be required and satisfy any Law necessary to the assignment or transfer of a Nonassignable Asset to Purchaser, and Seller shall take all such commercially reasonable actions as may be necessary to effect the assignment or transfer of the Nonassignable Asset. Unless and until any such consent that may be required is obtained or Law satisfied, Seller shall establish an arrangement reasonably satisfactory to Purchaser under which Purchaser would obtain the claims, rights and benefits and assume the corresponding liabilities and obligations under such Nonassignable Asset (including by means of any subcontracting, sublicensing or subleasing arrangement) or under which Seller would enforce for the benefit of Purchaser any and all claims, rights and benefits of Seller against a third party thereto; provided, that in no event shall Purchaser be required to enter into any such arrangement with respect to any Nonassignable Asset for which a required consent is necessary. Seller shall promptly pay over to Purchaser all payments received by such Seller in respect of all Nonassignable Assets. If and when the applicable consents or approvals, the absence of which caused the deferral of transfer of any Nonassignable Asset pursuant to this Section, are obtained, the transfer of the applicable Nonassignable Asset to Purchaser shall automatically and without further action be effected in accordance with the terms of this Agreement.

(b)    Deemed Consents. As part of the Sale Motion (or, as necessary in one or more separate motions), Seller shall request that by providing adequate notice of its intent to assume and assign any Assigned Contract, if any, the Bankruptcy Court shall deem any non-debtor party to such Assigned Contract that does not file an objection with the Bankruptcy Court during the applicable notice period to have given any required consent to the assumption of the Assigned Contract by Seller and assignment to Purchaser if, and to the extent that, pursuant to the Sale Order or other order of the Bankruptcy Court, Seller

8

is authorized to assume and assign such Assigned Contract to Purchaser and Purchaser is authorized to accept such Assigned Contract pursuant to Section 365 of the Bankruptcy Code.

2.4    **Liabilities**.

(a)    Subject to the terms and conditions of this Agreement, at the Closing, Purchaser assumes and agrees to perform, pursuant to the Bill of Sale and the Sale Order, the following Liabilities of Debtors (collectively, the "Assumed Liabilities"):

(i)    all of Seller's Liabilities under the Assigned Contracts if any, to the extent arising or attributable to any period after the Closing;

(ii)    all Cure Costs required to be paid pursuant to the Sale Order as a condition to Purchaser's assumption of the Assigned Contracts;

(iii)    all Assumed Debt;

(iv)    all allowed administrative expenses related to the Bankruptcy Cases incurred on or prior to the Closing Date, which, for the avoidance of doubt, shall not include (and Seller shall be responsible for paying) any allowed administrative expenses the Seller's trustee commission under section 326, the Seller's expenses, any fees or expenses of the Seller's or other estate professionals, and any administrative expenses of any of the petitioning creditors or their respective professionals; and

(v)    all Liabilities arising on or after the Closing Date with respect to the Assets or Purchaser's operation of the Business.

(b)    Except for the Assumed Liabilities described in Section 2.4(a), Purchaser shall not assume, nor shall it agree to pay, perform or discharge, any Liability of Seller, any Debtor or any Affiliate of any Debtor (collectively, the "Retained Liabilities").

2.5    **Purchase Price**. Subject to the provisions of this Agreement, the aggregate consideration to be paid by Purchaser to Seller for the Assets (the "Purchase Price") shall be (i) an amount of cash equal to $450,000 (the "Cash Purchase Price"), payable in accordance with Section 3.2(a), and (ii) the assumption of the Assumed Liabilities.

2.6    **Taxes**. The Parties are responsible for paying their own Taxes as required by applicable Law, consistent with Section 6.2.

**ARTICLE III**
**CLOSING**

3.1    **Closing**. The Parties shall consummate the transactions contemplated by this Agreement (the "Closing") on the date hereof (the "Closing Date"), with such Closing deemed to have occurred at 12:01 a.m., central standard time, or at such other place, time as the Parties shall mutually agree in writing, provided such date shall not be after August 31, 2023. The Closing shall take place via electronic exchange of executed documents and other closing deliveries via email on the Closing Date.

9

3.2   **Closing Deliveries**.

(a)   Payment of Cash Purchase Price.

(i)   At the Closing, Purchaser shall pay and deliver to Seller, by wire transfer of immediately available funds to one or more accounts designated by Seller, an amount equal to $150,000.

(ii)   The remaining $300,000 of the Cash Purchase Price shall be paid in monthly installments such that the aggregate payments made pursuant to this Section 3.2(a)(ii) equal ten percent (10%) of actual collections after the Closing Date from the accounts receivables purchased by Purchaser pursuant to this Agreement. Such payments shall be made on or as close as practicable on the 1st day of each month, beginning on the 90th day after the Closing Date. The aggregate payments made pursuant to this Section 3.2(a)(ii) shall not exceed $300,000, and if the aggregate payments of $300,000 have not been made pursuant to this Section 3.2(a)(ii) by the second anniversary of the first payment made pursuant to this Section 3.2(a)(ii), then Purchaser shall pay Seller such shortfall on the second anniversary of the first payment made pursuant to this Section 3.2(a)(ii).

(b)   Deliveries by Seller at the Closing. At the Closing, Seller shall deliver to Purchaser the following, unless waived by the Purchaser in its sole discretion:

(i)   a Bill of Sale, Assignment and Assumption Agreement or similar document, in a form acceptable to Purchaser and Seller (the "Bill of Sale"), duly executed by Seller;

(ii)   a Patent License, in a form reasonably acceptable to Purchaser (the "License"), duly executed by Seller;

(iii)   a copy of the Sale Order as entered by the Bankruptcy Court; and

(iv)   a properly completed and duly executed Internal Revenue Service Form W-9 from Seller on behalf of each Debtor; and

(v)   such other instruments of assignment or conveyance duly executed by the Seller as shall be customary and reasonably requested or reasonably necessary to transfer the Assets to Purchaser in accordance with this Agreement.

(c)   Deliveries by Purchaser at the Closing. At the Closing, Purchaser shall deliver to Seller the following, unless waived by the Seller in its sole discretion:

(i)   the cash payment described in Section 3.2(a)(i);

(ii)   the Bill of Sale, duly executed by Purchaser; and

(iii)   the License, duly executed by Purchaser.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby represents and warrants to Purchaser as follows:

4.1   **Power and Authority**. Seller has the full power and authority to execute, deliver, and perform the obligations under this Agreement and each Ancillary Document to which Seller is a party, subject to the approval of the Bankruptcy Court as described herein. Upon entry by the Bankruptcy Court

4885-0337-8033

of the Sale Order authorizing and approving this Agreement and the transactions contemplated by this Agreement and all Ancillary Agreements, instruments, and documents herein provided to be executed by Seller are and as of the Closing will be duly authorized, executed, and delivered by, and are and will be binding upon Seller.

4.2     **No Transfer of Assets**. Seller has not disposed of, transferred or agreed to transfer any of the Assets since the filing of Debtors' respective bankruptcies.

4.3     **Title to Assets**. Subject to entry of the Sale Order, Seller may convey the Debtors' interests in the Assets free and clear of any Lien (excluding any Permitted Liens).

4.4     **No Other Representations or Warranties**.     EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN THIS ARTICLE IV, NEITHER SELLER, DEBTORS, NOR ANY OF THEIR RESPECTIVE REPRESENTATIVES AND/OR AGENTS, NOR ANY OTHER PERSON HAS MADE OR MAKES ANY OTHER EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY OF ANY NATURE WHATSOEVER, EITHER WRITTEN OR ORAL, ON BEHALF OF SELLER OR DEBTORS  RELATING TO THE ASSETS OR OTHERWISE IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, INCLUDING ANY REPRESENTATION OR WARRANTY AS TO THE ACCURACY OR COMPLETENESS OF ANY INFORMATION REGARDING THE ASSETS FURNISHED OR MADE AVAILABLE TO PURCHASER AND/OR ITS REPRESENTATIVES, ANY INFORMATION, DOCUMENTS OR MATERIAL DELIVERED TO PURCHASER AND/OR ITS REPRESENTATIVES, PRESENTATIONS OR IN ANY OTHER FORM IN EXPECTATION OF THE TRANSACTIONS CONTEMPLATED HEREBY OR AS TO ANY REPRESENTATION OR WARRANTY ARISING FROM STATUTE, CONTRACT, OR OTHERWISE IN LAW. SELLER HEREBY EXPRESSLY DISCLAIMS ANY OTHER EXPRESS OR IMPLIED REPRESENTATIONS OR WARRANTIES WITH RESPECT TO ANY MATTER WHATSOEVER.  UPON CLOSING PURCHASER ACKNOWLEDGES AND AGREES THAT IT SHALL HAVE NO CLAIMS AGAINST SELLER, THE BANKRUPTCY ESTATES AND THEIR RESPECTIVE REPRESENTATIVES, AGENTS AND/OR PROFESSIONALS, AND ANY OTHER PERSON PREPARING OR SUPPLYING ANY INFORMATION REGARDING THE ASSETS AND/OR INVOLVED IN THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT FOR ANY ACTS OR OMISSIONS PRIOR TO AND ON THE CLOSING DATE.  For the avoidance of doubt, the foregoing sentence covers claims under any legal and/or equitable theory, including, but not limited to, negligence, negligence per se, negligent misrepresentation, breach of contract or breach of express or implied warranty, breach of fiduciary duty, strict liability or any other theory, whether arising from statute, contract, tort or otherwise. This release and waiver shall be binding upon Purchaser, its employees, contractors, representatives, agents, officers, directors, managers, members, brokers, heirs, successors, assigns, guests and invitees. This waiver shall act as a complete bar and defense against any released or waived claim and/or claim relating to the Assets as of the Closing Date.

### ARTICLE V

### REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to Seller as follows:

5.1     **Existence and Power**. Purchaser is a limited liability company duly organized, validly existing, and in good standing under the Laws of the State of Texas.

5.2     **Authorization**. Purchaser has all requisite power and authority to execute and deliver, and to perform its obligations under, this Agreement and each Ancillary Document to which Purchaser is a

11

party or subject. The execution, delivery, and performance by Purchaser of this Agreement and such Ancillary Documents and the consummation of the transactions contemplated hereby and thereby (a) are within Purchaser's corporate powers and (b) have been duly authorized by all necessary corporate action on the part of Purchaser.

5.3 **Enforceability**. This Agreement has been duly executed and delivered by Purchaser. This Agreement constitutes (and each Ancillary Document to which Purchaser is or will be a party will constitute at or prior to the Closing) a valid and legally binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms, assuming that this Agreement and such Ancillary Documents, where applicable, have been duly executed by the other parties thereto, except as enforcement may be limited by General Enforceability Exceptions.

5.4 **Governmental and Third Party Authorizations**. No consent, approval or authorization of, declaration to or filing or registration with, any Governmental Entity or any other Person is required to be made or obtained in connection with the execution, delivery and performance by Purchaser of this Agreement or any Ancillary Document or the consummation by Purchaser of the transactions contemplated by this Agreement or any Ancillary Document.

5.5 **Noncontravention**. The execution, delivery and performance by Purchaser of this Agreement or any Ancillary Documents, and the consummation of the transactions contemplated hereby and thereby, will not (a) violate the Organizational Documents of Purchaser, (b) violate any Law or Order, in each case applicable to Purchaser, or (c) constitute a default under, or give rise to termination, cancellation or acceleration of any right or obligation of Purchaser or to a loss of any benefit to which Purchaser is entitled, under any contract, agreement, instrument, commitment or arrangement binding upon Purchaser.

5.6 **Proceedings**. There are no Proceedings pending or, to the knowledge of Purchaser, threatened against Purchaser or any of its Affiliates that seek or otherwise are reasonably expected to (x) materially adversely affect the ability of Purchaser to consummate the transactions contemplated by this Agreement and the Ancillary Documents or (y) prevent, enjoin or otherwise delay the transactions contemplated by this Agreement.

5.7 **Exclusivity of Representations and Warranties**. Except as set forth in Article V of this Agreement, neither Purchaser nor any other Person is making any representation or warranty of any kind or nature whatsoever, oral or written, express or implied, relating to Purchaser or its Affiliates, and Purchaser hereby disclaim any such other representations or warranties.

5.8 **Reliance**. Purchaser confirms it has relied on its own knowledge or the advice of its own counsel, accountants, or advisors with regard to the tax and other considerations involved in making the purchase contemplated by this Agreement, and no representations have been made to Purchaser by Seller or any party associated with Seller concerning the Business or other matters, except as expressly set forth in this Agreement.

5.9 **Capability**. Purchaser is willing, authorized, capable and qualified financially, legally and otherwise, to unconditionally perform all obligations under this Agreement.

12

## ARTICLE VI
## COVENANTS OF PURCHASER AND SELLER

6.1 **Public Announcements**. Only the Purchaser or its controlled Affiliates may issue press releases or public statements regarding this Agreement or the transactions contemplated by this Agreement, provided that any such press releases and public statements shall be consistent with the terms of this Agreement (including, without limitation, the Sale Motion) and any other disclosures made in the Bankruptcy Cases. Seller agrees not to make any public statements or press releases regarding this Agreement or the transactions contemplated by this Agreement, except as necessary to obtain approval of this Agreement from the Bankruptcy Court, or as may be necessary to enforce rights in the Bankruptcy Cases or other legal proceedings.

6.2 **Tax Matters; Allocation of Purchase Price**. The Purchase Price and Assumed Liabilities (and any other items required to be included as consideration under applicable Tax law) shall be allocated among the Assets in accordance with Section 1060 of the Code (the "Allocation"). Purchaser shall be responsible for preparing an Allocation prepared pursuant to this Section 6.2. Such Allocation shall be binding on the Parties for tax purposes only, but the Seller shall not be bound by such Allocation for purposes of allocating the Purchase Price between the Debtors and disbursing funds pursuant to the Bankruptcy Code. To the extent that the Seller has the information in her possession or such information is available to her, Seller agrees to prepare, execute, file and deliver all documents, forms and other information as Purchaser may reasonably request to prepare the Allocation. In case of any adjustment to the Purchase Price, requiring an amendment to the Allocation, Purchaser shall prepare and deliver such amended Allocation to Seller, which shall be prepared in a manner consistent with the Allocation, and if the Allocation is disputed by any Governmental Entity, the Party receiving notice of such dispute shall promptly notify the other Party.

6.3 **Cure Costs; Accrued Liabilities**. Purchaser shall pay, or shall cause to be paid, pursuant to Section 365 of the Bankruptcy Code and the Sale Order, any Cure Costs relating to the Assigned Contracts, if any, as and when finally determined by the Bankruptcy Court pursuant to the procedures set forth in the Sale Order.

6.4 **Wrong-Pocket**.

(a) If, at any time following the Closing, either Party becomes aware that any Asset (including any accounts and notes receivable received by Seller or any Debtor after Closing) which should have been transferred to, or any Assumed Liability (whether arising prior to, at or following the Closing) which should have been assumed by, Purchaser pursuant to the terms of this Agreement was not transferred to or assumed by Purchaser as contemplated by this Agreement, then (i) Seller shall promptly transfer or cause its Affiliates to transfer such Asset to Purchaser, and (ii) Purchaser shall promptly assume or cause its Affiliates to assume such Assumed Liability, in each case for no consideration.

(b) In the event that either Party receives any payment that is for the account of the other Party or any Affiliate thereof, such Party shall hold such amounts in trust for the other Party, without interest thereon, and promptly, but no later than five (5) days, transfer or deliver to the other Party any cash, checks, electronic funds transfers or other such forms of payment so received.

(c) If, at any time following the Closing, either Party becomes aware that any Excluded Asset which should have been retained by, or any Retained Liability (whether arising prior to, at or following the Closing) which should have been retained by, Seller pursuant to the terms of this Agreement was transferred to or assumed by Purchaser, then (i) Purchaser shall promptly transfer or cause

13

its Affiliates to transfer such Excluded Asset to Seller, and (ii) Seller shall promptly assume or cause its Affiliates to assume such Retained Liability, in each case for no consideration.

6.5   **Employee Matters**. Effective as of immediately before the Closing, Purchaser may offer (or cause its Affiliates to offer) employment to certain employees of the Business.

6.6   **Post-Closing Access to Documents**.  To the extent any Party requires access to any of the Books and Records in possession of the other Party, such possessing Party agrees to provide reasonable access and cooperation to the requesting Party so the requesting Party may obtain access and, if necessary, copies of such documents, at its own expense.

## ARTICLE VII
## SURVIVAL AND RELEASE

7.1   **Survival**. The representations and warranties of the Parties and, except as provided in the last sentence of this Section 7.1, contained in this Agreement and in any certificate delivered pursuant to this Agreement shall terminate upon the Closing. Only the covenants and agreements in this Agreement that by their terms survive the Closing (or that contemplate action or impose obligations after the Closing) shall so survive the Closing in accordance with their respective terms.

## ARTICLE VIII
## MISCELLANEOUS

8.1   **Notices**. Any notice, request, demand, waiver, consent, approval or other communication which is required or permitted hereunder shall be in writing and shall be deemed given: (a) on the date established by the sender as having been delivered personally, (b) on the date delivered by a private courier as established by the sender by evidence obtained from the courier, (c) on the date delivered by email (if sent prior to 5:00 p.m. New York City time, or if sent later, then on the next Business Day), or (d) on the fifth Business Day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications, to be valid, must be addressed as follows:

If to Purchaser, to:

CURevl Assets 2, LLC
305 21st Street, Suite 170
Galveston, Texas 77551
Attn: Lance Teinert, CEO
Email: lance@curevl.com

With a required copy (which shall not constitute notice) to:

Gray Reed & McGraw LLP
1600 Elm St., Suite 4600
Dallas, Texas 75201
Attn: Aaron Kaufman and Brock Niezgoda
Email: akaufman@grayreed.com and bniezgoda@grayreed.com

If to Seller, to:

Michelle H. Chow
16200 Addison Road, Suite 140

14

4885-0337-8033

Addison, Texas 75001
Email: chowtrustee@gmail.com

With a required copy (which shall not constitute notice) to:

Singer & Levick, P.C.
16200 Addison Road, Suite 140
Addison, Texas 75001
Attn: Michelle E. Shriro
E-mail: mshriro@singerlevick.com

or to such other address or to the attention of such Person or Persons as the recipient Party has specified by prior written notice to the other Parties hereto.

8.2     **Waivers**. Neither the failure nor any delay by any Party in exercising any right, power or privilege under this Agreement or the documents referred to in this Agreement will operate as a waiver of such right, power or privilege, and no single or partial exercise of any such right, power or privilege will preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege. To the maximum extent permitted by applicable Laws, (a) no waiver that may be given by a Party will be applicable except in the specific instance for which it is given, and (b) no notice to or demand on one Party will be deemed to be a waiver of any right of the party hereto that gives such notice or demand to take further action without notice or demand.

8.3     **Expenses**. Each of Seller, on the one hand, and Purchaser, on the other hand, will bear its own respective expenses incurred in connection with the negotiation and execution of this Agreement, the other Ancillary Documents and the transactions contemplated hereby and thereby.

8.4     **Successors and Assigns**. This Agreement may not be assigned by any Party (whether by operation of law or otherwise) without the prior written consent of the other Parties; provided that this Agreement and the rights and obligations of Purchaser hereunder may be assigned by Purchaser, without the prior written consent of Seller, to one or more designees, so long as such person is designated in writing by Purchaser to Seller prior to the Closing and Purchaser continues to remain obligated in full hereunder; provided, further that Seller may assign some or all of its rights or delegate some or all of their obligations hereunder to successor entities pursuant to a plan of reorganization confirmed by the Bankruptcy Court. Subject to the foregoing, all of the terms and provisions of this Agreement shall inure to the benefit of and be binding upon the Parties and their respective permitted successors and assigns. Any attempted or purported assignment that is not in accordance with the terms of this Section 8.4 shall be void ab initio.

8.5     **Governing Law**. This Agreement and the exhibits and schedules hereto shall be governed by and interpreted and enforced in accordance with the Laws of the State of Texas, without giving effect to any choice of Law or conflict of Laws rules or provisions (whether of the State of Texas or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Texas.

8.6     **Consent to Jurisdiction; Service of Process; Waiver of Jury Trial**. Any suit, action or other proceeding arising out of or relating to this Agreement or any transaction contemplated hereby shall be brought exclusively in the Bankruptcy Court. Each of the Parties hereby irrevocably submits to the exclusive jurisdiction of such court for the purpose of any such suit, action or other proceeding. A final judgment in any such suit, action or other proceeding may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law. Each Party irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement or the transactions contemplated hereby in such court, and hereby irrevocably and unconditionally waives and

15

agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum. Each Party further agrees that service of any process, summons, notice or document by U.S. registered mail to such Party's respective address set forth herein shall be effective service of process for any such action, suit or proceeding. Nothing in this <u>Section 8.6</u>, however, shall affect the right of any Party to serve legal process in any other manner permitted by Law. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED HEREBY OR THE ACTIONS OF SUCH PARTY IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE AND ENFORCEMENT HEREOF.

8.7    <u>**Counterparts**</u>.

(a)    This Agreement may be executed in counterparts, each of which when executed and delivered shall be deemed to be an original and all of which counterparts taken together shall constitute but one and the same instrument. This Agreement shall become effective when each Party shall have received a counterpart hereof signed by the other Party. The Parties agree that the delivery of this Agreement, the Ancillary Documents and any other agreements and documents at the Closing may be effected by means of an exchange of facsimile signatures or other electronic delivery. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or scanned pages shall be effective as delivery of a manually executed counterpart to this Agreement.

(b)    No Party shall raise the use of a facsimile machine or electronic transmission to deliver a signature or the fact that any signature or agreement or instrument was transmitted or communicated through the use of a facsimile machine or electronic transmission as a defense to the formation or enforceability of this Agreement and each Party forever waives any such defense. The words "execution," "executed", "signed," "signature," and words of like import in this Agreement shall include images of manually executed signatures transmitted by facsimile or other electronic format (including, without limitation, "pdf," "tif" or "jpg") and other electronic signatures (including, without limitation, SignNow and DocuSign).

8.8    <u>**No Third Party Beneficiaries**</u>. No provision of this Agreement is intended to or shall confer upon any Person other than the Parties any rights or remedies of any nature whatsoever under or by reason of this Agreement.

8.9    <u>**Entire Agreement; Amendment**</u>. This Agreement, the Ancillary Documents, schedules and the other documents, instruments and agreements specifically referred to herein or therein or delivered pursuant hereto or thereto, set forth the entire understanding of the Parties with respect to the subject matter hereof and the transactions contemplated hereby. All schedules referred to herein are intended to be and hereby are specifically made a part of this Agreement and incorporated by reference herein. Any and all previous agreements and understandings between or among the Parties regarding the subject matter hereof, whether written or oral, are superseded by this Agreement. This Agreement, including all exhibits hereto, may not be amended, modified or supplemented, or the terms hereof waived, except by a written agreement executed by all of the Parties.

8.10    <u>**Captions**</u>. All captions and section headings contained in this Agreement are for convenience of reference only, do not form a part of this Agreement and shall not affect in any way the meaning or interpretation of this Agreement.

8.11    <u>**Severability**</u>. Any provision of this Agreement which is invalid or unenforceable in any jurisdiction shall be ineffective to the extent of such invalidity or unenforceability without invalidating or

rendering unenforceable the remaining provisions hereof, and any such invalidity or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. Upon such determination that any term or other provision of this Agreement is invalid, illegal or unenforceable under applicable Law, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible.

8.12   **Interpretation**. The Parties have participated jointly in the negotiation and drafting of this Agreement, and any rule of construction or interpretation otherwise requiring this Agreement to be construed or interpreted against any Party by virtue of the authorship of this Agreement shall not apply to the construction and interpretation hereof. The Parties agree that any drafts of this Agreement or any Ancillary Document prior to the final fully executed drafts shall not be used for purposes of interpreting any provision thereof, and each of the Parties agrees that no Party or any Affiliate thereof shall make any claim, assert any defense or otherwise take any position inconsistent with the foregoing in connection with any Proceeding among any of the foregoing. For the purposes of this Agreement, except as otherwise expressly provided herein or unless the context otherwise requires: (a) the meaning assigned to each term defined herein shall be equally applicable to both the singular and the plural forms of such term and vice versa, and words denoting either gender shall include both genders as the context requires; (b) where a word or phrase is defined herein, each of its other grammatical forms shall have a corresponding meaning; (c) the terms "hereof," "herein," "hereunder," "hereby" and "herewith" and words of similar import shall, unless otherwise stated, be construed to refer to this Agreement (including any exhibit or schedule hereto) as a whole and not to any particular provision of this Agreement; (d) when a reference is made in this Agreement to an Article, Section, paragraph, Exhibit or Schedule, such reference is to an Article, Section, paragraph, Exhibit or Schedule to this Agreement, unless otherwise specified; (e) the word "include," "includes," and "including" when used in this Agreement shall be deemed to be followed by the words "but not limited to," unless otherwise specified; (f) the word "extent" in the phrase "to the extent" shall mean the degree to which a subject or other thing extends, and such phrase shall not mean simply "if" and (g) all accounting terms used and not defined herein have the respective meanings given to them under GAAP. All dollar or "$" amounts set forth in this Agreement shall refer to U.S. dollars unless explicitly indicated otherwise. Time is of the essence for each and every provision of this Agreement. In the computation of periods of time from a specified date to a later specified date, the word "from" means "from and including" and the words "to" and "until" mean "to but excluding" and the word "through" means "to and including". Whenever the last day for the exercise of any privilege or the discharge of any duty hereunder shall fall upon a day that is not a Business Day, the Party having such privilege or duty may exercise such privilege or discharge such duty on the next succeeding day that is a Business Day. Any reference in this Agreement to "made available" means a document or other information that was provided or made available to Purchaser and its Representatives in Seller's electronic or virtual data rooms, management presentations or in any other form.

8.13   **Prevailing Party**. In the event of any Proceeding in connection with this Agreement or any Ancillary Document after entry of the Sale Order, the prevailing Party in any such Proceeding shall be entitled to recover from the other Party its costs and expenses, including, without limitation, reasonable legal fees and expenses in enforcing this Agreement, the Sale Order or any other rights or remedies that arise from this Agreement, the Sale Order or any Ancillary Documents contemplated hereunder.

8.14   **Further Assurances**. Following the Closing, each of the Parties shall, and shall cause their respective Affiliates to, execute and deliver such additional documents, instruments, conveyances and assurances, and take such further actions (at no material cost or expense to the Party to whom the request is directed) as may be reasonably required to carry out the provisions hereof and give effect to the Closing transactions contemplated by this Agreement; provided, however, neither Party shall be required by this Section 8.14 to initiate or join in any Proceeding.  For the avoidance of doubt, the Seller shall take every

17

step necessary to cause the Debtors' bank accounts to remain open during the pendency of the Bankruptcy Cases and cooperate with the Purchaser to transition such accounts to the Purchaser following the Closing.

8.15    **Arms Length Transaction**. The transactions contemplated by this Agreement, and the relationship between Seller and Purchaser, and their respective agents, is wholly "arms length."

8.16    **Time of Essence**.  Time is of the essence of this Agreement and all of the terms, provisions, covenants and conditions hereof.  The Parties agree that irreparable damage could occur in the event that any of the Parties fails to take any action required of it hereunder to consummate the transactions on or before the scheduled Closing Date as contemplated by this Agreement in accordance with its specified terms.

* * * *

[Signature page follows]

4885-0337-8033

IN WITNESS WHEREOF, each of the Parties has caused this Agreement to be duly executed on its behalf as of the date first above written.

SELLER:

Michelle Chow, as trustee for SmartHealth Paycard LLC and HealthCare Paycard LLC


_____
Michelle Chow


PURCHASER:

CURevl Assets 2, LLC


By: _____
Name:
Title: